Fierro, Appellant, *v.* Williamsport.

Argued January 10, 1956. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Patrick H. Fierro,* appellant, in propria persona.

*Charles Bidelspacher, Jr.,* City Solicitor, with him *Charles A. Szybist* and *Bidelspacher & Bidelspacher,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, March 13, 1956:

This was a complaint in equity seeking to enjoin the City of Williamsport from enforcing its ordinance levying a tax on the privilege and transaction of engaging in the operation of mechanical or electronic phonographs (juke boxes) played by persons who inserted coins into the machines. Plaintiff appeals from the decree of the court below dismissing the complaint.

The pertinent provision of the city's ordinance reads as follows: "Section 2: (a) 'Admission' shall mean monetary charge of any character whatever, charged or paid for the privilege of engaging in amusements as hereinafter defined. (b) 'Amusement' shall mean all manner and form of entertainment within the City of Williamsport, Pa., including among others, the following: juke boxes, pinball machines, and any other form of mechanical and/or electronic device for which admission is charged or paid."

The authority for the ordinance is the so-called "tax anything" Act of 1947, P. L. 1145, as amended, 53 PS

§2015.1. The "tax anything" Act is similar to the Sterling Act and a similar ordinance of Philadelphia was sustained in *Phonograph Operators Association v. City of Philadelphia,* 54 D. & C. 83.

Obviously and literally, the word "amusement," includes juke boxes or any other form of mechanical or electronic device for which admission is charged or paid. Admittedly the ordinance, section 2 (a), provides that admission shall mean a monetary charge of any character whatsoever charged for engaging in the amusement as defined. The ordinance clearly contemplates taxation of these juke boxes. The tax was not upon a "place of amusement" but upon the privilege of engaging in amusement as defined in section 2 (b) of the ordinance. The ordinance in its title gave notice of defined meanings thereafter set forth and is unimpeachable.

Decree affirmed; appellant to pay the costs.

----

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On March 18, 1954, the City Council of Williamsport enacted an ordinance named, "The Admission Tax Ordinance of 1954," whose purpose, according to the title, is "To provide revenue by imposing a tax upon sales of admission to amusements as defined in this ordinance, etc."

Under the authority of this municipal legislation the City levied a tax of 10% on the gross receipts of a juke box owned by the plaintiff, Patrick H. Fierro, who filed a bill in equity praying for an injunction to restrain the City from enforcing the levy against him because, inter alia, "Plaintiff avers that the Defendant's ordinance marked Exhibit 'A' is not applicable to him nor enforceable against him for the reason that

Plaintiff does not charge or receive an admission fee for the privilege of attending or engaging in amusements."

The lower Court refused the injunction and this Court has affirmed. I would reverse.

In its opinion the Court below logically analyzed the objective of the Williamsport City Council by saying: "The ordinance was evidently written in an effort to take the subject of its taxation out of the general prohibition of the Act of June 25, 1947, supra, which provides that the local authorities do not have the authority 'except on sales of *admission to places of amusement* or on sales or other transfers of title or possession of property, to levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a State tax."*

I do not believe it is necessary to cite legal authority, if indeed any could be found on so obvious a matter, that a juke box is not a *place of amusement*. A place of amusement obviously denotes and connotes an establishment, indoors or outdoors, into which a human being enters for the purpose of amusement. It may be a building, it may be an enclosure, it may be a race track, but in every instance the introduction of a human body is contemplated and provided for. A juke box is not a structure into which a person can enter. It is not an enclosure. In the eyes and ears of many people, including the writer of this Opinion, a juke box confined to "jazz" records may be a nuisance. It robs the air of sweet silence, it substitutes for the gentle concord of stillness the wailings of the so-called "blues singer," the whinings of foggy saxophones, the screeching of untuned fiddles, the blasts of head-splitting

---

* Italics throughout, mine.

horns, and the battering of ear-shattering drums. It makes a mockery of music, it replaces harmony with cacophony, tonality with discord, and peace with annoyance. If the purpose of the City Council of Williamsport was to tax the juke box out of existence as a nuisance and an enemy to the general welfare of its population, it certainly had the authority under general police power to do that, but it could not, merely as a means of raising revenue, play havoc with the English language.

The word "admission" in both the title and the text of the ordinance can mean only one thing—admission of living persons. Webster's Unabridged Dictionary defines admission as follows: 1. Act of practice of admitting; permission or privilege to enter into a place, into society, etc.; admittance; entrance, access. *What numbers groan for sad admission there!* Young. 2. Acceptance into an office or position; institution. 3. Price of entrance; fee paid at or for entering.

All governmental authorities are being hard-pressed these days to find revenue with which to run their respective governmental subdivisions. It is for that reason that the General Assembly passed the Act of June 25, 1947, P. L. 1145, popularly known as the "Tax Anything" Act. But while a municipality may, under this broad legislation, tax almost anything, it must stay within certain bounds. The Legislature was aware of the possibility of the duplication, and, in fact, the multiplication of taxes on the same things, values and activities. It accordingly erected certain fences which municipal taxing authorities were forbidden to climb into restricted territory. As pointed out by the Court below, the Legislature specifically stated that the local authorities do *not* have the authority "except on *sales of admission to places of amusement,*" to "levy, assess or collect a tax on the privilege of employing such tan-

gible property as is now or does hereafter become subject to a State tax."

The City of Williamsport, in defiance of this statute, climbed the forbidding fence by calling a mere piece of mechanism a "place of amusement." If we are to allow municipalities to circumvent the clear intent of the Legislature by allowing them to give to words meanings which contradict the dictionary and defy everyday usage, the statutes of Pennsylvania will be on the way to becoming a morass of ambiguity, a swamp of confusion and a melancholy prologue to entangling, suffocating chaos.

The City Council apparently believed that their ordinance would not controvert the statute so long as the title alone stayed within the statutory prohibition. Thus the title was worded to show that the purpose of the ordinance was "to provide revenue by imposing a tax upon sales of *admission* to amusements." This, of course, the Act of 1947 permitted. But in the text of the ordinance the Council changed the meaning of "admission" to something else. They said in the text, that: "(a) 'Admission' shall mean monetary charge of any character whatever, charged or paid for the privilege of engaging in amusements as hereinafter defined." They then defined "Amusement" to mean: "(b) 'Amusement' shall mean all manner and form of entertainment within the City of Williamsport, Pa. including among others, the following: juke boxes, pinball machines, and any other form of mechanical and/or electronic device for which admission is charged or paid."

By means of this Jacob's Ladder, the Council thought they could ascend into the heaven of unrestricted taxation. They overlooked, however, another statute which absolutely prohibits what they have done. The Third Class City Law, Act of June 28, 1951, P. L. 662, Section 10, 53 PS §12198-1011, provides: "All pro-

574

posed ordinances shall be presented to council in written form as bills and shall be numbered serially for the calendar year. They shall not be so altered or amended on their passage through council as to change their original purpose. *No ordinances,* except general appropriation ordinances, *shall be passed containing more than one subject, which shall be expressed in its title."*

The proposition that "admission" is being changed to say something different from its actual meaning, i.e., to mean charging for operating a mechanical device instead of admittance to an establishment of some character, is not expressed in the title and therefore, under the above cited law, the ordinance is bound to be invalid and void.

The Majority opinion completely overlooks the Third Class City Law and, therefore, as I view the matter, (and I state this with all respect), completely misses the whole point in the case.

I disassociate myself from such faulty marksmanship and, therefore, dissent.